

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2004

# In Re: Great Atl

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4100

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Great Atl " (2004). *2004 Decisions.* Paper 508.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/508

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**


UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT


No. 03-4100


IN RE: THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC. SECURITIES LITIGATION

Leonard Brody, on behalf of himself and all others
similarly situated; Stanley E. Blyskal; Larry Heying;
Paul Buback; Leola H.B. Zintl,

<u>Appellants</u>

*(Caption Amended Per Clerk's Order of 2/25/04)


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-02674)
District Judge: Faith S. Hochberg


Argued May 27, 2004

BEFORE: RENDELL and COWEN, <u>Circuit Judges</u> and SCHWARZER*, <u>District Judge</u>

(Filed July 9, 2004)


*Honorable William W Schwarzer, Senior United States District Judge for the Northern
District of California, sitting by designation.

Katharine M. Ryan, Esq.
Schiffrin & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Gary S. Graifman, Esq.
Kantrowitz, Goldhamer & Graifman
210 Summit Avenue
Montvale, NJ 07645

Marcus N. Bozeman, Esq. (Argued)
S. Gene Cauley, Esq.
James A. Carney, Esq.
Tiffany M. Wyatt, Esq.
Cauley, Geller, Bowman & Rudmam
11001 Executive Center Drive
P.O. Box 25438, Suite 200
Little Rock, AR 72221-5438

Counsel for Appellants Leonard Brody,
Stanley E. Blyskal, Larry Heying,
Paul Buback and Leola H.B. Zintl

Robert A. Alessi, Esq. (Argued)
Cahill, Gordon & Reindel
80 Pine Street
New York, NY 10005

John L. Thurman, Esq.
Farrell & Thurman
172 Tamarack Circle
Skillman, NJ 08558

Counsel for Appellees Great Atlantic &
Pacific Tea Co., Inc.; Christin W.E. Haub;
Elizabeth Culligan; Fred Corrado;
Mitchell Goldstein and Kenneth A. Uhl

---

OPINION

---

COWEN, Circuit Judge.

This securities class action was brought on behalf of investors who purchased securities issued by The Great Atlantic & Pacific Tea Company ("A&P") during the period between May 19, 1999 and July 5, 2002, inclusive ("the class period"). The lead plaintiffs appeal the District Court's Order dismissing the Amended Complaint for failing to adequately plead *scienter*. We find no error in the District Court's analysis and will affirm.

**Background**

As we only write for the parties, we will briefly explain the relevant facts underlying this appeal. A&P is a Montvale, New Jersey company which operates various food and drug stores, conventional supermarkets, and limited assortment food stores in the United States and Canada. During the years preceding and including the class period, A&P filed reports with the Securities & Exchange Commission ("SEC"), which misstated the amounts of vendor allowances, income from subleased stores, and self insurance reserve accounts. The financial statements included representations from management that they had been prepared in accordance with Generally Accepted Accounting Procedures ("GAAP"). According to the Amended Complaint, however, these misstatements occurred as a result of violations of GAAP.

3

On March 28, 2000, Christian Haub, the CEO and Chairman of the Board of Directors of A&P issued a press release regarding a detailed study of A&P's business processes and infrastructure, in which A&P compared itself to other leading companies, both inside and outside the supermarket industry. The press release indicated that A&P's "Project Great Renewal" would improve profitability over the next four years. In various conference calls with the market, the individual defendants made various representations that the balance sheets were being strengthened and profitability was increasing.

On May 24, 2002, A&P announced that it would delay the filing of its annual report in order to investigate "improper acts occurring in certain of its operating regions related to the 'appropriate timing for the recognition of allowances and the accounting for inventory.'" (App. at 72.) A&P also requested an extension for filing its annual report from the SEC, explaining that it was investigating "certain irregularities relating to the appropriate timing for the recognition of vendor allowances and the accounting for inventory." (Id.) On July 5, 2002, A&P filed its annual report, in which it restated its income statements from fiscal years 1999 and 2000, and the quarterly income statements from the first three quarters of fiscal year 2001. A&P issued a press release explaining that it had discovered certain irregularities relating to vendor allowances, which had prompted it to review all of its accounting procedures. A&P fired at least nine high level employees within days of the restatement. Three months after the restatement, another high level employee resigned.

4

On June 5, 2002, Leonard Brody filed this action on behalf of himself and investors like him. The District Court consolidated Brody's action with several others, appointed Brody and four others as lead plaintiffs, and permitted the filing of an amended complaint. The complaint alleges that A&P and several of its corporate officers and high-level employees ("the individual defendants") knowingly issued false statements about its business, in violation of Section 10(b) of the Securities and Exchange Act and Securities Exchange Commission Rule 10b-5. It also alleges that certain of the individual defendants could be held liable for these actions as "controlling persons" under Section 20(a) of the Exchange Act. A&P filed a motion to dismiss the amended complaint, arguing, *inter alia*, that it failed to adequately plead *scienter*. The District Court granted A&P's motion and Brody now appeals.

## Discussion

We exercise plenary review over the District Court's decision to grant a motion to dismiss under Rule 12(b)(6). Broselow v. Fisher, 319 F.3d 605, 607 (3d Cir. 2003). We must accept as true all well-pleaded facts alleged in the complaint, and draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002). A motion to dismiss may only be granted when it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. Id. We are not required, however, to credit bald assertions or legal conclusions. Id. We also exercise plenary review over the District

Court's interpretation of federal securities laws. Id.

Section 10(b) of the Securities and Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b). Rule 10b-5, promulgated under Section 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange
>
> . . . .
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
>  in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. In order to state a claim under section 10b and Rule 10b-5, plaintiffs must allege that the defendants "(1) made a misstatement or an omission of a material fact (2) with *scienter* (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." In re Ikon Office Solutions, Inc. Sec. Litig., 277

6

F.3d 658, 666 (3d Cir. 2002).

A securities fraud claim is subject to heightened pleading requirements. Under Federal Rule of Civil Procedure 9(b), "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u, adds an additional requirement, providing that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "[U]nless Plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." In re Rockefeller Center, 311 F.3d at 224. The failure to meet these requirements will result in the dismissal of the complaint. In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999).

Plaintiffs may establish a "strong inference" that defendants acted with the requisite *scienter* in one of two ways. They may either allege facts that establish that defendants had the motive and opportunity to commit fraud, or they may set forth facts that constitute circumstantial evidence of reckless or conscious misbehavior. Id. at 531.

7

As with the other allegations of fraud, the facts that give rise to a strong inference of *scienter* must be alleged with particularity, meaning that plaintiffs must plead "the who, what, where, when, and how: the first paragraph of any newspaper story." Id. at 534 (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

The District Court found that Brody made six allegations regarding *scienter*: (1) that A&P recognized vendor allowances in a manner that violated GAAP; (2) that A&P recognized self-insurance reserves in a manner that violated GAAP; (3) that A&P recognized closed-store subleases in a manner that violated GAAP; (4) a former senior accounting manager stated that corporate account officers of A&P were aware of and directed the methods used to recognize vendor allowances, self-insurance reserves, and closed-store subleases; (5) A&P made a sale of over $275 million in senior notes during the class period; and (6) after the discovery of the accounting irregularities, A&P fired nine employees and Defendant Culligan resigned. The District Court held that Brody failed to plead any of these allegations with the particularity required to give rise to a strong inference of *scienter*, and failed to connect any of these allegations to each other in a manner permitting a strong inference of *scienter*.

Brody argues that the District Court erred in failing to discuss whether A&P and the individual defendants had the motive and opportunity to commit fraud. He further argues that such a motive existed, because A&P wished to facilitate the sale of the $275 million in Senior Notes to institutional investors. The complaint alleges that A&P was

8

able to sell these notes "on terms they would not otherwise have been able to receive had the truth about its accounting violations been known." (App. at 94.) The complaint did not make specific allegations regarding the sale of the notes, however, and the District Court was not required to credit this bald assertion. "In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent." GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237-38, (3d Cir. 2004).

Brody also points to A&P's desire to manage its earnings in order to meet analyst and market expectations as a possible motive. (Appellant's Br. at 35.) Again, this is a general corporate motive, and is not sufficient to give rise to a strong inference of *scienter*. Because the complaint does not allege sufficient facts to establish motive, the District Court did not err in discussing only the circumstantial evidence approach to pleading *scienter*. This approach requires a showing of either recklessness or conscious wrongdoing.

Recklessness is not simply negligence. "A reckless statement is a material misrepresentation or omission 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" Id. at 239 (quoting In re

9

Advanta, 180 F.3d at 535).

When the alleged fraud is based on non-disclosure of facts, evidence that the defendants had actual knowledge of the facts is sufficient to show *scienter*. Id. When the alleged fraud is based on misrepresentation or false statements, however, it is not enough to merely allege that defendants knew or must have known that their statements were false. Id. Instead, plaintiffs must support their allegations with specific facts that lay out the "who, what, where, when, and how." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)). The *scienter* threshold will be met "if a plaintiff can show – by whatever means – that defendants 'did not have an honest belief in the truth of their statements . . . .'" In re Ikon, 277 F.3d at 667 n.7 (quoting McLean v. Alexander, 599 F.2d 1190, 1198 (3d Cir. 1979)).

The complaint alleges that A&P knew that the vendor allowances, self-insurance reserves, and closed-store subleases were being recorded in a specific manner; these allegations do not, however, show that A&P knew that the procedures used violated GAAP. Each of A&P's financial disclosures contained boilerplate language that the procedures used in the reports conformed with GAAP. Brody points to this language as proof that the GAAP violations were made with fraudulent intent. Again, however, this language does not show that A&P knew that its procedures violated GAAP prior to its restatement of earnings in July 2002. Finally, the former senior accounting manager stated only that A&P knew of and directed the methods by which the vendor allowances

10

were prematurely recognized. There is no allegation that A&P knew that such recognition violated GAAP. As the District Court held, the allegations in the complaint were not pled with sufficient particularity to establish *scienter*.

The allegations regarding the discharged employees are similarly inadequate. Other than a conclusory statement that nine employees were fired as a result of the accounting irregularities, the complaint makes no specific allegations regarding how these employees were involved in the accounting irregularities or whether they knew that the accounting policies violated GAAP before the restatement was issued. It does not appear that A&P made any public statement linking the firings to the accounting irregularities. The complaint also alleges, without any factual basis, that Defendant Culligan resigned from the company because of the accounting problems. As Defendant Culligan's resignation took place three months after A&P's restatement, it is unclear that the resignation was at all related to the restatement. Thus, the personnel changes do not support a strong inference of *scienter*.

Brody argues that the District Court did not consider the allegations as a whole in determining that *scienter* had not been adequately pleaded. It does not appear, however, that the District Court made any error in its analysis. The allegations in the complaint simply do not meet the heightened standards required by Rule 9(b) and the PSLRA. As such, dismissal was proper.

Finally, the complaint alleges that certain of the individual defendants could be

held liable for A&P's actions as "controlling persons" under Section 20(a) of the Exchange Act. Section 20(a) imposes liability on "any person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder . . ." 15 U.S.C. § 78t(a). In order to show controlling person liability, plaintiffs must demonstrate that one person controlled another person (or in this case, the corporation) and that the controlled person is liable under the Exchange Act. See In re Alpharma, Inc. Sec. Litig., ___ F.3d ___, WL 1326013 (3d Cir. June 15, 2003). In this case, the controlled person is A&P. Because plaintiffs failed to state a Rule 10b-5 claim against A&P, and failed to allege any individual wrongdoing separate from the allegations of 'control,' the Section 20(a) claim against the individual defendants fails as well.

For the foregoing reasons, the judgment of the District Court entered on September 18, 2003, will be AFFIRMED.